SORBE ET AL. *vs.* MERCHANT'S INSURANCE COMPANY.

APPEAL FROM THE PARISH COURT OF THE PARISH AND CITY OF NEW-ORLEANS.

To *ship goods at a place*, means to put them on board of a vessel at the place designated, but to *ship goods from a place* does not necessarily imply that they should be laden at the place from which they are to be shipped. The word *ship* may signify either the putting on board of a vessel, or the carrying merchandise on a voyage between two *termini*.

In case of doubt the contract should be construed strictly against the person contracting.

In a policy of insurance of certain merchandise *to be shipped from* a given place within a specified period, the material circumstance which ought to weigh most is the time of the sailing of the vessel on which the property is laden; and this could take place so as to bind the insurer at any time within the specified period.

The plaintiffs aver in their petition, "that on or about the 25th February, 1831, they contracted with the Merchants' Insurance Company of New-Orleans, for the assurance of merchandise by any good American or French vessels, to be shipped from Havre and any port of France south of it to New-Orleans, during six months from and after the first day of August, 1831, and to be consigned to them, in consideration whereof, they paid the said company the sum of six hundred dollars, being at and after the rate of one and

24

EASTERN DIS.
February, 1833.

SORBE ET AL.
vs.
MERCHANTS
INSURANCE CO.

a half per cent. in forty thousand dollars. They allege there is error in the policy, it differing from the terms of the original application and acceptance, which are in possession of defendants. They show that under the policy, there was shipped to them from the port of Bordeaux, by the French ship Trinity, of which Betters was master, goods and merchandise to the amount of seventy-four thousand four hundred and ninety-two francs and thirteen centimes, equal with the addition of fifteen per cent to the sum of seventeen thousand one hundred and thirty-three dollars. The vessel sailed from Bordeaux on or about the 10th day of August, 1831, and was wrecked on the coast of Louisiana. The merchandise was wholly lost by risks within the policy, viz. by the perils of the seas, of which the said company had notice, abandonment was tendered, and payment demanded after the necessary proof exhibited to them.

The Merchant's Insurance Company denied that the plaintiffs had any claim upon them under any policy signed by the proper officers of the company. They denied all the allegations of the petition.

The policy stated that P. E. and O. Sorbé, "On account of whom it may concern, do make insurance, and cause whom it may concern to be insured, lost or not lost, at and from Havre and any port or ports of France south of it to New Orleans, upon all kinds of lawful goods and merchandise, laden or to be laden on board of good French and American vessel or vessels or either, whereof is master for the present voyage M. or whoever else shall go for master in this said vessel, or by what other name or names the said vessel or the master thereof is or shall be named or called: beginning the adventure upon the said goods and merchandise from and immediately following the loading thereof on board of the said vessel at            as aforesaid, and so shall continue and endure until the said goods and merchandise shall be safely landed at New-Orleans aforesaid. And it shall and may be lawful for the said vessel in her voyage, to proceed and sail to, touch and stay at, any ports or places, if thereunto obliged by stress of weather or other unavoidable accident, without prejudice to this insurance."

EASTERN DIS.
*February*, 1834.

SORBE ET AL.
*vs.*
MERCHANTS
INSURANCE CO.

The insurance was declared to be on "wine, brandy, sweet oil and other merchandise, as interest may appear, with fifteen per cent. on the invoice: to be shipped, to the assured during six months from and after the 1st day of August, 1831: loss, if any, payable to P. E. & O. Sorbé. Averaged loss recoverable on each package of dry goods."

John Betters testified that he was master of the French ship Trinity on her late voyage from Bordeaux to New-Orleans. She was chartered for two hundred and fifty tons, to the house of Sorbé; conditioned to sail on the 5th August. In fact, the house of Sorbé put on board about three hundred tons; there were some goods on board belonging to other persons. They commenced loading the cargo consisting of wine, brandy, vinegar, some hardware, &c. about the 10th of July, and continued to receive them from the house of Sorbé up to the 6th August. On that day they left their place of mooring, and dropped down to Bacealan, a kind of suburb to Bordeaux. A lighter was afterwards sent to the ship loaded with boxes of wine belonging to the house of Sorbé, the whole of which could not be taken on board; a part, about two hundred boxes were received and the others weret reurned to the city.

Witness on the 10th of August joined the ship at Pauliar, about eleven leagues below Bordeaux. They put to sea on the 12th, about three o'clock in the afternoon.

To the best of his recollection, he signed his bills of lading between the 6th and 9th of August; he is well satisfied that it was during this time, though he cannot state the exact day, and he is sure he did not sign his bills before the goods were received on board.

They pursued their voyage without any thing unusual until the 4th October, when during a thick fog the ship struck. They were then out of sight of land, as they found when the fog cleared off. They struck about 9 o'clock in the morning; about four in the afternoon the ship bilged; about sun set they dispatched their boat for assistance, and the passengers and crew, fifty-three in number, mounted into the tops to prevent the sea breaking over them during

*February,* 1334.
EASTERN DIS.

SORBE ET AL.
*vs.*
MERCHANTS
INSURANCE CO.

the night. About forty-eight hours after the ship struck, the boat not returning, they made a raft and left the ship. Twenty-four hours after, they landed at a place near Cheniere and Tigre, where the boat joined them with assistance about twelve o'clock the following night. They saved nothing from the wreck. Books, papers, clothing, &c. all were lost, the ship having sunk suddenly and unexpectedly.

The Trinity had been built about two years, and completely sound. It was the opinion of witness, that the ship was carried out of her course by the force of currents, and by reason of the weather having been for several days preceding, rainy or cloudy, so that they could not take their observations.

The testimony of the captain was corroborated by that of Peter Calvaizac the mate.

The cause was submitted to a jury, who returned a verdict for the plaintiff, from which after an unsuccessful attempt at a new trial, the defendants appealed.

*Slidell,* for defendants and appellants, made the following points.

1. All the difficulty in this case has arisen from the false view taken of it by the plaintiffs. The time of shipment is not a matter of representation or even of warranty; it is the condition on which the policy attached. All goods shipped or laden, which are equivalent terms, at any time from the 1st August to 1st February, were covered by the policy to the extent of forty thousand dollars; none shipped or laden before or after those dates was covered; the time of sailing was immaterial, unless indeed a delay altogether unreasonable and unaccounted for should elapse from shipment to time of sailing.

2. The stating shipment from and after the 1st August, was clearly not a representation, if it be considered as a warranty, it must be strictly complied with to the very letter. See *Phillips on Insurance, p.* 125, 127, 128. *Hughes do.* 233, 246, 247. *Wilson* vs. *Schroder. Moody and Wilkins's Reports for* 1829, *p.* 317.

EASTERN DIS.
*February*,1834.

SORBE ET AL.
*vs.*

MERCHANTS
INSURANCE CO.

3. In a policy, the clauses fixing the *termini* of a voyage, which in time policies are the day and hour when the insurance commences, and when it terminates, are construed most strictly. See *Manly* vs. *United Marine and Fire Insurance Company*. 9 *Massachussets Reports*, 87. *Payne* vs. *Hutchinson*, 2 *Taunton*, 405. *Castillo* vs. *Noble*, 2 do. 403. *Phillips on Insurance*, p. 163, 164. *Hughes do. p.* 136, 140. *Murray* vs. *Columbian Insurance Company*. 4 *Johns. Rep.* 448.

4. If the policy had been in the usual form on goods by the Trinity from Bordeaux, it would have attached from the moment of the goods being put on board of the ship, or of the lighters, if such were the custom of the port. See *Phillips on Insurance, p.* 166. *Code of Commerce, art.* 328, and 341; and this is also the express condition of the policy, to commence from the loading, shipping, landing, are synonymous terms.

5. The plainiffs themselves produce as part of their preliminary proof, a bill of lading, in which the goods are acknowledged to be "shipped" in good order and well conditioned dated 30th July. That they have always been so considered by the courts see *Murray* vs. *Columbian Insurance Company*. 11 *Johns* 306. *Howard* vs. *Knettle*. 16 *East. Rep.* 189. See also *Webster* and *Johnson's Dictionaries*. Such also is the popular and general meaning of the verb *ship*.

6. The risk never having attached, the plaintiffs could have claimed a return of premium for all goods loaded before the 1st August, and their claims could not have been resisted by the defendants. *Phillips on Insurance, p.* 513.

7. The judge erred in charging the jury, that the contract was to be construed strictly against the defendants. The plaintiffs are the parties stipulating, the defendants those who contracted the obligation, and if the intention is doubtful, the latter are entitled to the benefit of the doubt. *Civil Code, art.* 1952. *Phillips on Insurance, p.* 14. *Pardessus*, 3 vol. p. 269, No. 777. *Le Nouveau Valin, p.* 354, where a number of authorities are cited.

*Strawbridge, contra.*

Eastern Dis.
*February, 1834.*

SORBE ET AL.
*vs.*
MERCHANTS'
INSURANCE CO.

MATHEWS, J., delivered the opinion of the court.

This is an action on an open policy of insurance, in which the plaintiffs claim the value of certain goods shipped to them, from Bordeaux in France, to New-Orleans, in pursuance of their contract of assurance, and which goods were lost on the voyage, &c. They obtained judgment in the court below, from which the defendants appealed.

The assurance was effected on goods of a certain description, to the amount of forty thousand dollars, to be shipped from Havre or any port of France, south of it during six months from and after the first day of August, 1832, in any French or American vessel or vessels, &c. The goods for the loss of which reparation is claimed in the present suit, were laden on board a French vessel called the Trinity, which sailed from Bordeaux about the 6th of August. There is no dispute as to many of the important facts of the case, viz: the sailing of the vessel, the value of the goods shipped for account of the plaintiffs, and their loss by a risk insured against.

We find on the record a bill of exceptions to the opinon of the judge *a quo*, expressed to the jury which tried the cause. In his charge he stated, that in his opinion, the word shipped did not mean *as used in the policy*, the puting on board or lading, but the despatching of goods and that in case of doubt the contract was to be construed strictly against the person contracting.

It is a matter of doubt from the evidence at what time the property in question, was put on board the vessel; whether on the 30th of July, 1832, the date of the bill of lading, or after the first of August, before which time the captain testifies that he did not sign any bill of lading.

On the part of the defendants, it is contended that the contract of insurance never took effect, in consequence of an implied warranty by the insured, that the goods should not be shipped or put on board the vessel, before the first of August. A philological contest is raised as to the mean-

ing of the word to ship or shipped. To ship goods at a place, means to put them on board of a vessel at the place designated; but the expression to ship goods from a place, does not necessarily imply that they should be laden at the place from where they are to be shipped or carried, they have been put on board at some other place, and shipped from one different. It appears to us, that the word to ship as used in the transportation of merchandise, from one place to another, may signify whether the puting on board of a vessel or ship, or the carrying of such merchandise on a voyage between two *termini*. We are, therefore, of opinion that the judge below did not err in his charge to the jury, respecting the meaning of the word shipped as used in the present policy. Neither do we beleive he erred, in relation to the opinion expressed as to the mode of interpreting the contract. The word stipulation was used by *Roman* jurists, to express all kinds of contracts, except such as had a particular denomination; it was done by question on answer; the obligation was imposed on himself by the person who answered. In the jurisprudence of France, from which our Civil Code is borrowed, the word stipulation means any engagement or condition, introduced in a contract, &c. See *Merlin, Répertoire, Verbo, stipulation.*

The contract was made to insure goods to be shipped from Havre, or any port south of it in France, and to be consigned to the insured, during a period of six months to commence from the first of August, 1832. This policy stipulates for time and for places where the goods are to be carried. According to a fair construction of the contract the material circumstance which ought to accept most, is the time of the sailing of the vessel on which the property ought to be laden, and this could have taken place so as to bind the insurers at any period, whether six months from the first of August, 1832. And as in our opinion the contract did not take effect, until after the first day of the period stipulated; the circumstance of the goods having been put on board a day or two before, admiting it to be true, ought not to have such weight, as to annul the contract or pre-

EASTERN DIS.
*February*, 1834.

SORBE ET AL.
*vs.*
MERCHANTS'
INSURANCE CO.

To ship goods at a place, means to put them on board of a vessel at the place designated; but to ship goods from a place, does not necessarily imply that they should be laden at the place from which they are to be shipped. The word *ship* may signify either the putting on board of a vessel, on the carrying merchandise on a voyage between two *termini*.

In case of doubt the contract is to be construed strictly against the person contracting.

In a policy of insurance of certain merchandise *from* a given place, *to be shipped* within a specified period, the material circumstance which ought to weigh, most, is the time of the sailing of the vessel on which the property is laden; and this could take place so as to bind the insurer at any time within the specific period.

EASTERN DIS.
February, 1834.

SORBE ET AL.
vs.
MERCHANTS'
INSURANCE CO.

vent it from producing any effect. Any damage which the merchandise might have sustained previous to the first of August, would not have been embraced by the policy, and the probability of any such damage occuring in so short a period of two days is so remote; unless by some violent convulsion of nature, easily susceptible of proof; that it ought not to be taken into consideration in the discussion of the cause. This case differs from those cited by the counsel for the appellants, when goods were put on board at places different from those stipulated in the policy. In the present instance the policy would have protected goods shipped from any of the ports designated during six months, from the first of August, 1832. To show that the essential and substantial part of the contract, relates to the time of the vessel sailing from the port *a quo*, and not the time of lading; let it be supposed that merchandise had been put on board in January, 1833, which would be within the limitation of the six months, and the ship had not sailed until some time in February, it certainly could not be pretended that the underwriters would have been responsible for any loss happening in such a voyage.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed with costs.

*Slidell*, for appellants, applied for re-hearing.

The defendants in this case respectfully ask for a re-hearing, and that the judgment of Parish Court may be amended, by disallowing interest on the sum recovered from the day of the verdict, no interest having been allowed by the jury, nothing can be added to the verdict of a jury, and no interest either before or after judgment can be given on an unliquidated demand. This question has been settled by repeated decisions of the court, among the number I refer the court to Orleans *vs.* Denis. 7 *N. S.* 225. Blair *vs.* Kelso. 7 *N. S.* 263. Trimble *vs.* Moore, 2 *L. R.* 577. Pessas *vs.* Mendibrown. 4 *L. R.* 129.

*Strawbridge, contra.*

1. By the eighth rule of practice in this court, parties are obliged to file with the clerk a note of their points, and authorities and "*no re-hearing can be granted on any point which is neglected to be furnished in compliance with this rule.*"

2. Interest is fairly due from the the time the sum was liquidated, and a slight error on one side is as much entitled to protection as in the other, the rule is positive and the re-hearing must be refused.

The motion for a re-hearing was overruled.